**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MASSA MULTIMEDIA ARCHITECTURE, PC, on its own behalf and as Assignee of the claims of HUTTON CONSTRUCTION, INC.<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A. and TD BANK, N.A.,<br><br>Defendants. | Civil Action No. 3:25-cv-13999 (GC) (RLS)<br><br>**OPINION** |

**CASTNER, District Judge**

**THIS MATTER** comes before the Court upon Defendants JPMorgan Chase Bank, N.A. and TD Bank, N.A.'s Partial Motion to Dismiss. (ECF No. 25.) Plaintiff Massa Multimedia Architecture, PC (MMA) opposed and Defendants replied. (ECF Nos. 27, 28.) The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendants' Motion is **GRANTED**.

## I. BACKGROUND[1]

MMA, an architectural design firm headquartered in Neptune, New Jersey, seeks reimbursement for funds it lost due to an alleged check fraud scheme involving its own bank, TD,

[1] On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

and the bank where the at-issue check was presented, Chase. (ECF No. 1, Ex. A. ¶¶ 1, 27.)[2] The Court outlines only the factual background necessary to resolve the instant Motion.[3]

MMA has a long-standing business relationship with Walmart Stores, Inc. (*Id.* ¶ 30.) MMA also has a long-standing relationship with Hutton Construction, Inc. (*Id.* ¶ 31.) MMA and Hutton build and develop projects on Walmart's behalf. (*Id.* ¶ 30.) In June 2024, MMA received an email that appeared to be from a representative of Hutton's accounting department. (*Id.* ¶ 32.) The email indicated that Hutton was changing the means by which it would accept payments. (*Id.*) MMA believed the email to be authentic as Hutton had recently submitted invoices for June 2024 related to its work on construction projects. (*Id.* ¶¶ 33-34.) In response to the email, MMA sent a check for $728,976.78 (the total of Hutton's June 2024 invoices) via overnight courier to an address provided in the email. (*Id.* ¶¶ 33-36.) The check was subsequently presented for payment at a Chase Bank in Levittown, New York. (*Id.* ¶ 37.) MMA holds an account with TD and is not a customer of Chase. (*Id.* ¶ 16).

---

2 Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

3 Plaintiff originally filed this action in state court, where Plaintiff attached seven exhibits to its Complaint, including an incident report, email correspondence, and letter correspondence relied on in the Complaint, as well as certifications of individuals attesting to facts. The Court will consider the exhibits, but not the individual certifications. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); *see also Parodi v. McLaughlin*, Civ. No. 08-1095, 2009 WL 197575, at *1, n.3 (D.N.J. Jan. 26, 2009) ("[D]ocuments that are integral to or explicitly relied upon in the complaint . . . may be considered without converting the motion to dismiss into one for summary judgment."); *Rose v. Bartle*, 871 F.2d 331, 339 n.3 (3d Cir. 1989) (holding affidavits attached to a pleading are not the sort of "written instruments" contemplated by Rule 10(c)); *see also Moore v. Bank of Am., NA*, Civ. No. 18-13727, 2019 WL 2281599, at *1, n.1 (D.N.J. May 28, 2019) (declining to consider certification attached to state court proceeding in deciding motion to dismiss upon finding it was "materially identical" to an affidavit).

MMA avers that one or more of the fraudulent actors opened an account in the name "Hutten (not Hutton) Construction" days before the check was presented for deposit at the Chase location. (*Id.* ¶ 38.) As alleged, Chase had knowledge of suspicious activity related to the Hutten Construction account. (*Id.* ¶¶ 38-48.) According to MMA, Chase failed to follow its required verification procedures in cashing the check. (*Id.* ¶ 54.) Specifically, MMA avers that Chase failed to verify the spelling of the intended payee with an MMA employee, and that Chase failed to determine whether the check was valid as signed. (*Id.* ¶¶ 8, 54.) MMA further alleges that Chase "helped" to "launder the illicit proceeds" to the fraudulent actors. (*Id.* ¶ 159.)

The fraud was uncovered on August 6, 2024, when Hutton inquired as to why it had not yet received payment for its June invoices. (*Id.* ¶ 71.) MMA avers that in the days after the fraud took place and after the funds had already been disbursed from MMA's TD account, a TD representative promised MMA that it was "going to get [its] money back." (*Id.* ¶¶ 74, 209-212.) Specifically, MMA alleges that TD promised MMA "specifically, clearly, and without qualification or reservation that MMA would get back the $728,976.78 lost to the Fraudster Parties." (*Id.* ¶ 209.)

MMA filed its Complaint on June 25, 2025 in the Superior Court of New Jersey, Monmouth County, Law Division. (ECF No. 1.) Defendants timely removed the action pursuant to 28 U.S.C. §§ 1441 and 1446.[4] (*Id.*) In its Complaint, MMA asserts six causes of action: aiding and abetting fraud (against Chase) (Count One); commercial bad faith (against Chase) (Count Two); common law negligence (against Chase) (Count Three); conversion pursuant to Uniform Commercial Code (UCC) § 3-420 (against Chase) (Count Four); improper charge to customer account pursuant to UCC § 4-401 (against TD) (Count Five); and promissory estoppel (against

[4] This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

TD) (Count Six). (ECF No. 1, Ex. A at 36-46.) In response, Defendants filed this Motion. (ECF No. 25.) Defendants do not challenge MMA's UCC claims (Counts Four and Five), but instead move to dismiss each of MMA's common law claims (Counts One, Two, Three, and Six). (*Id.*)

## II. LEGAL STANDARD

On a motion to dismiss for failure to state a claim upon which relief can be granted, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it contain enough facts to state a claim to relief that is plausible on its face." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (citation modified). "A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (citation modified). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

## III. DISCUSSION

Defendants argue that each of MMA's common law claims are preempted by New Jersey's UCC. (ECF No. 25-1 at 11-13.) In opposition, MMA argues that New York law applies and under New York's UCC, MMA's common law claims are not preempted. (ECF No. 27 at 16-20.) To resolve the preemption issue, the Court must first determine which state's UCC applies.

### A. Choice of Law

In a diversity action, a federal court "must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case." *Warriner v. Stanton*, 475 F.3d 497, 499-500 (3d Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Section 4-102(2) of the UCC, as codified by New Jersey at N.J.S.A. § 12A:4-102(2),[5] determines which forum's law governs. Section 4-102(2) provides that the liability of a bank "for action or non-action with respect to any item handled by it for purposes of presentment, payment or collection is governed by the law of the place where the bank [or branch] is located." N.J.S.A. § 12A:4-102(2); UCC § 4-102(2). *See Girard Bank v. Mount Holly State Bank*, 474 F. Supp. 1225, 1230 (D.N.J. 1979) (applying N.J.S.A. § 12A:4-102(2) to dispute concerning presentment of check in non-forum state and concluding that the law of the state where the bank is situated applies); *see also Kinzig v. First Fid. Bank, N.A.*, 649 A.2d 634, 635–36 (Law. Div. 1994) ("[t]he law of the state where the drawee bank is situated applies. . . . Thus, the obligations of [the bank] are governed by New Jersey law."); *see also Zurich Am. Ins. Co. v. Dah Sing Bank, Ltd.*, Civ. No. 03-7778, 2004 WL 1328215, at *6 (S.D.N.Y. June 15, 2004) (applying California law to dispute over bank's handling of check where check was cashed in California but litigation was filed in New York). This application is also supported by the official comments to the UCC.[6]

---

[5] New York has adopted the same provision of the UCC, codified at NY UCC § 4-102(2).

[6] Official Comment 2(c) to section 4-102 provides that the UCC's choice of law rule is "intended to make the conflicts rule of subsection (b) apply from the inception of the collection process of an item through all phases of deposit, forwarding, presentment, payment and remittance or credit of proceeds" such that the subsection "applies to the initial act of a depositary bank in receiving an item and to the incidents of such receipt." N.J.S.A. § 12A:4-102, cmt. 2(c); UCC § 4-102, cmt. 2(c).

Here, MMA alleges that the check at issue was presented for deposit at the Chase branch located in New York. (ECF No. 1, Ex. A ¶¶ 1, 12, 37.) Defendants do not dispute this fact. (ECF No. 28 at 7.) Thus, New York law applies.

**B. Preemption**

Having determined that New York law applies, the Court must determine whether MMA's common law claims are in fact preempted by New York's UCC. New York's UCC contains a preemption provision, which provides that "[u]nless displaced [*i.e.*, preempted] by the particular provisions of this act, the principles of law and equity" apply. N.Y. UCC § 1-103(b). In other words, the "critical inquiry" is whether the relevant provisions of New York's UCC "protect against the type of underlying injury or misconduct alleged in" the common law claims. *See Markatos v. Citibank, N.A.*, 760 F. Supp. 3d 70, 81 (S.D.N.Y. 2024) (citing *Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 597 F.3d 84, 89–90 (2d Cir. 2010)). If so, a party's common law claims will be preempted.

New York's preemption provision is grounded in the UCC's hostility to legal actions against depositing and collecting banks. *See State v. Barclays Bank of New York, N.A.*, 151 A.D.2d 19, 23 (N.Y. App. Div. 1989), *aff'd*, 76 N.Y.2d 533, 563 (N.Y.1990) ("banks are liable only when they fail to follow reasonable commercial standards and then only to the extent of the converted proceeds remaining in the bank's hands"); *see also Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 575 (Ct. App. 2011) ("The manner in which checks are processed by banks is governed by the Uniform Commercial Code."). The comments to New York's preemption provision provide further guidance on the UCC's preemption of common law and equitable claims:

> [W]hile principles of common law and equity may *supplement* provisions of the Uniform Commercial Code, they may not be used to *supplant* its provisions, or the purposes and policies those provisions reflect, unless a specific provision of

> the Uniform Commercial Code provides otherwise. In the absence of such a provision, the Uniform Commercial Code preempts principles of common law and equity that are inconsistent with either its provisions or its purposes and policies.

NY UCC § 1-103 (Official Comment 2) (emphasis in original).

Where a claim is not preempted, both New York and New Jersey recognize tort liability of a financial institution only where a special relationship has been established from which a duty can be deemed to flow. *See City Check Cashing, Inc. v. Manufacturers Hanover Tr. Co.*, 166 N.J. 49, 61 (2001) ("[U]nder New York and New Jersey law a 'special relationship' must exist for a duty to arise."). A "transient and noncontractual relationship" is not enough to establish a special relationship or a duty sufficient to avoid application of the UCC. *See FMC Corp. v. Fleet Bank*, 641 N.Y.S.2d 25, 26 (1st Dep't 1996).

With these principles in mind, the Court will address each of MMA's common law claims.

***1. Aiding and Abetting Claim Against Chase (Count One)***

MMA brings an aiding and abetting claim for Chase's alleged role in "provid[ing] material assistance" to the fraudulent actors in cashing the fraudulent check. (ECF No. 1, Ex. A, ¶¶ 159-160.) The Court finds that MMA's aiding and abetting claim is preempted by section 3-419 of New York's UCC[7] which governs conversion of instruments.[8] Section 3-419 provides that an instrument is converted when "it is paid on a forged indorsement."

---

7 Plaintiff pled Count Four pursuant to UCC § 3-420. (ECF No. 1.) However, New York has not adopted the most recent revised Model UCC, which replaced section 3-419 with the new section 3-420. *Compare* Model UCC § 3-420, *with* N.Y. UCC § 3-419. As such, the Court looks to section 3-419 as the applicable provision for conversion claims under New York's UCC.

8 Checks are negotiable instruments and are therefore governed by UCC Article 3. *See Siemens Bldg. Techs., Inc. v. PNC Fin. Servs. Grp. Inc.*, 226 F. App'x 192, 199 (3d Cir. 2007) ("Article 3 of the UCC regulates negotiable instruments, including checks.").

In *Orbach v. Ali*, a New York trial court dismissed the plaintiff's common law negligence claim as duplicative of the plaintiff's claim under section 3-419 because section 3-419 addresses the precise conduct for which the plaintiff sought to hold the bank liable in negligence, namely the bank's alleged payment on a check based on a forged indorsement. 217 N.Y.S.3d 923 (Sup. Ct., N.Y. County 2024) (dismissing complaint where plaintiff alleged no facts supporting a duty owed by the bank to the plaintiff who was "neither the drawer, the drawee, *nor* the named payee of the check."). There, the plaintiff sued Bank of America for its role in accepting checks for deposit that were allegedly forged by the plaintiff's employee. *Id.* Bank of America had flagged transactions by the plaintiff's employee as suspicious but limited its investigation to contacting the plaintiff's office and speaking only to one employee, who was the same employee that was allegedly forging the checks. *Id.* The court explained that section 3-419 governs the liability of a bank for such conduct, regardless of whether the bank's conduct conformed to "reasonable commercial standards applicable to the business." *Id.*

Here, MMA seeks to recover based on similar circumstances by virtue of its aiding and abetting claim. Similar to the plaintiff in *Orbach*, MMA seeks to recover against Chase for its role in accepting a fraudulent check for deposit. (ECF No. 1, Ex. A, ¶ 156) (alleging Chase's employee "accepted for deposit the Certified Check . . . knowing full well that . . . [the account holder] was a fraudster".) Thus, MMA's common law aiding and abetting claim is preempted by New York's UCC. *See* NY UCC § 1-103(b).

Accordingly, the Court grants Defendants' Motion as to Count One with prejudice.

***2. Commercial Bad Faith Claim Against Chase (Count Two)***

The Court finds that MMA's commercial bad faith claim is also preempted by section 3-419 of New York's UCC. MMA pleads essentially the same allegations in support of Counts One

and Two (ECF No. 1, Ex. A, ¶¶ 163-182, 184-185), except for one additional paragraph alleging that Chase acted in bad faith in its handling of the check. (*Id.* ¶¶ 178, 183 (alleging "Chase's bad faith in handling the Check and making the funds available").) Alleging "bad faith" in such a conclusory fashion is insufficient to assert a common law claim outside the scope of section 3-419. Again, the underlying conduct that MMA seeks to recover against is Chase's depositing of a fraudulent check. (ECF No. 1, Ex. A, ¶ 178 (alleging Chase's employee "accepted for deposit the Certified Check . . . knowing full well that . . . [the account holder] was a fraudster").) Irrespective of what common law claim MMA has purportedly identified, the same alleged misconduct and harm is alleged, and it is exactly the type of misconduct that section 3-419 is intended to protect against. *See* N.Y. UCC § 3-419(1)(c) ("An instrument is converted when . . . it is paid on a forged indorsement."); *see also Orbach*, 217 N.Y.S.3d at 923. Indeed, by its express terms, section 3-419 applies to those who act in bad faith. *See* N.Y. UCC § 3-419(3) (providing for no liability to those who act in *good faith* and in accordance with reasonable commercial standards).

Accordingly, the Court grants Defendants' Motion as to Count Two with prejudice.

***3. Negligence Claim Against Chase (Count Three)***

The Court finds that MMA's negligence claim is also preempted by section 3-419 of New York's UCC. The Court agrees with Defendants that like MMA's other common law claims against Chase, MMA's negligence claim "seek[s] to impose liability on Defendants for their handling and processing of the check," (ECF No. 25-1 at 12-13) such that the claim falls within conduct regulated by the UCC. Again, while MMA's complaint addresses a myriad of alleged conduct by Chase, such as its alleged failure to "perform[] the required verification" for the check (ECF No. 1, Ex. A, ¶ 192), MMA's allegations are essentially a repurposing of the same conversion claim but pled with a different title. New York's UCC captures this conduct as well. Indeed,

where a plaintiff seeks to hold a bank liable in negligence for failing to adequately investigate suspicious activity before accepting a check for deposit, section 3-419 "addresses the precise conduct" underlying the negligence claim such that it is preempted by the UCC. *See Orbach*, 217 N.Y.S.3d at 923.

Even assuming MMA could bring a negligence claim against Chase for allegedly failing to follow proper verification procedures, MMA has failed to plead a special relationship with Chase. MMA concedes that it cannot assert such a claim without establishing this special relationship. (ECF No. 27 at 24.) However, MMA is not a customer of Chase. (ECF No. 1, Ex. A, ¶16 (explaining MMA held an account with TD).) And although MMA attempts to show a "special relationship" by identifying Chase's attempted efforts to verify the check, such allegations are insufficient to establish a special relationship. For example, in *Barkany Asset Recovery & Management v. Southwest Securities Inc.*, the court found a special relationship between a non-customer and a bank where the non-customer made inquiries about a customer's account for purposes of determining whether to supply a loan to the bank's customer. 972 N.Y.S.2d 458, 464 (N.Y. Sup. Ct. 2013). Specifically, the bank's customer was seeking a short-term loan, the customer had provided bank account statements to the prospective lender to prove the aggregate value of his accounts, and the prospective lender's attorney called the bank to verify that amount. *Id.* at 461. There were multiple factual circumstances that supported a possible inference that the bank knew its bank statements were being used for the purpose of supplying a loan that the court found supported its finding of a special duty, including that the bank had told the prospective lender's attorney that the bank's customer had sufficient funds to secure the loans. *Id.* at 465. The court also considered the fact that the defendant bank had special knowledge regarding the funds

available in its customer's account. *Id.* at 464-65. There are no such allegations in this case to establish a special duty.

Because MMA's negligence claim seeks to impose liability on Chase for its handling and processing of the check such that the claim falls within conduct regulated by the UCC, and further having found that MMA has failed to plead a special relationship sufficient to bring a negligence claim against Chase, the Court finds MMA's negligence claim is preempted under New York's UCC. *See* NY UCC § 1-103(b); *see also City Check Cashing, Inc. v. Mfrs. Hanover Tr. Co.*, 166 N.J. 49, 61 (2001) ("[T]he notion that under New York and New Jersey law a 'special relationship' must exist for a duty to arise conforms with the law in other jurisdictions.").

Accordingly, the Court grants Defendants' Motion as to Count Three with prejudice.

**C. Failure to State a Claim**

As to MMA's remaining promissory estoppel claim, TD argues MMA fails to state a claim.[9] There is no conflict between the laws of New Jersey and New York with respect to common law promissory estoppel claims. *See Varonis Sys., Inc. v. Sphere Tech. Sols., LLC*, Civ. No. 18-12055, 2019 WL 2119558, at *5 (D.N.J. May 14, 2019) (conducting choice of law analysis for promissory estoppel and concluding the "analysis would yield the same result under either New York or New Jersey law."); *see also Tarzy v. Dwyer*, Civ. No. 18-1456, 2021 WL 4134805, at *2 (S.D.N.Y. Sept. 10, 2021) ("There is no material difference between the elements

---

[9] Defendants generally argue that each of MMA's common law claims are preempted by the UCC but make no arguments specific as to why MMA's claim for promissory estoppel is preempted. (ECF No. 25-1 at 11-13.) As such, Defendants have not identified any "particular provision" of New York's UCC that displaces MMA's promissory estoppel claim against TD. *See* N.Y. UCC § 1-103(b); *see also Woodell v. Coach*, Civ. No. 22-02222, 2022 WL 17486262, at *3 (D.N.J. Dec. 7, 2022) (citing *Leisure Pass N. Am., LLC v. Leisure Pass Grp., Ltd.*, Civ. No. 12-03375, 2013 WL 4517841, at *4 (D.N.J. Aug. 26, 2013) (finding arguments not addressed in parties' briefing "are deemed waived.")). Thus, MMA's promissory estoppel claim is not preempted by the UCC. *Id.*

of promissory estoppel, unjust enrichment, and quantum meruit claims under New York and New Jersey law.") (emphasis omitted). Thus, the Court applies the law of New Jersey. *See Rowe v. Hoffman-La Roche, Inc.*, 189 N.J. 615, 621 (2007) ("If there is no actual conflict, then the choice-of-law question is inconsequential, and the forum state applies its own law to resolve the disputed issue."). To state a claim for promissory estoppel under New Jersey law, MMA must allege: "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Goldfarb v. Solimine*, 245 N.J. 326, 339-40 (2021).

Here, Defendants argue that the Court should take judicial notice of the Deposit Agreement between MMA and TD, which would provide the exclusive contractual remedy. (ECF No. 25-1 at 19.) MMA argues the Deposit Agreement does not fall within the four corners of the Complaint because it was not attached to the Complaint. (ECF No. 27 at 27.) The Court notes that Defendants cite no authority in support of their position (ECF No. 28 at 13) and the Court is not aware of any authority requiring it to take judicial notice of a purported contract that is not attached to the Complaint. As such, the Court finds that MMA's promissory estoppel claim is not precluded by the existence of a contract at this preliminary stage. *Lenchitz v. Cenlar FSB*, Civ. No. 22-07216, 2024 WL 1052000, at *1 n.2 (D.N.J. Mar. 11, 2024) (considering monthly mortgage statements attached to the defendant's motion to dismiss because "[the p]laintiffs refer to and rely on each of these documents in their [a]mended [c]omplaint"). The Court therefore addresses each of the elements of promissory estoppel in turn.

As to the first two elements, the Court finds MMA has sufficiently pled that a representative of TD promised MMA that it was "going to get [its] money back" and that the promise was made with the expectation that MMA would rely on it (ECF No. 1, Ex. A, ¶¶ 73-74, 209). The Court

disagrees with Defendants that this promise was conditional. (ECF No. 28 at 14.) On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, and MMA's allegations pled in support of its promissory estoppel claim do not suggest TD's promise was conditional on any recovery by TD from the fraudulent actors. (ECF No. 1, Ex. A, ¶ 209 (alleging TD promised MMA "specifically, clearly, and without qualification or reservation that MMA would get back the $728,976.78 lost to the Fraudster Parties.").) *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

However, the Court concludes that MMA has failed to sufficiently plead that it relied on TD's promises to its detriment. In support of its promissory estoppel claim, MMA pleads no facts to establishing that it substantially relied on TD's promise to its detriment. (ECF No. 1, Ex. A, ¶¶ 208-215.) Instead, MMA makes the conclusory statement that "it relied on th[e] promise to its detriment, and was damaged by TD's breach of its promise." (*Id.* ¶ 214.) Such conclusory allegations are insufficient. *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC*, 999 F.3d at 904 (instructing courts to "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements.")).

Accordingly, the Court grants Defendants' Motion as to Count Six without prejudice.

## IV. CONCLUSION

For the foregoing reasons, and other good cause shown, Defendants' Partial Motion to Dismiss (ECF No. 25) is **GRANTED**. An appropriate Order follows.

Dated: October 15, 2026

Georgette Castner

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE